IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2024

**STATE OF TENNESSEE v. WILLIAM DANGELO PENNY**

**Appeal from the Circuit Court for Madison County**
**No. 21-15     Donald H. Allen, Judge**

_____

**No. W2023-00912-CCA-R3-CD**

_____

The Defendant, William Dangelo Penny, was convicted of driving under the influence of an intoxicant. The trial court placed him on probation for eleven months and twenty-nine days after service of forty-eight hours. The court also suspended his driver's license. Thereafter, the Defendant was arrested for evading arrest, reckless driving, leaving the scene of an accident, and driving on a suspended license. After a hearing, the trial court fully revoked the Defendant's probationary sentence. On appeal, the Defendant argues that a complete revocation of his sentence was an abuse of discretion. Upon our review, we respectfully disagree and affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Harold E. Dorsey, Trenton, Tennessee, for the appellant, William Dangelo Penny.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Allison Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

In May 2021, the Defendant was convicted of driving under the influence and other traffic offenses. The trial court placed the Defendant on probation for eleven months and

twenty-nine days after service of forty-eight hours in custody, which was to be served consecutively to a two-year sentence in a previous case. The trial court also suspended the Defendant's driving privileges.

On April 12, 2023, Investigator Jeff Herndon with the Jackson Police Department witnessed a truck crash into an SUV. Investigator Herndon yelled out of his window and instructed the truck's driver, the Defendant, to pull over, but the Defendant fled. The investigator followed, activating his emergency equipment.

During the chase, the Defendant drove into oncoming traffic and traveled at nearly seventy miles per hour. The chase ended when the Defendant abandoned the truck and attempted to escape on foot. The officers apprehended the Defendant after pursuing him on foot and with a helicopter. The Defendant did not have a valid driver's license, and the officers discovered that the truck was stolen with an altered vehicle identification number. The Defendant claimed that he had borrowed the truck from a friend, though the friend told officers that the Defendant did not have permission to use the truck.

At a later probation revocation hearing, the Defendant admitted that he violated the terms and conditions of his probationary sentence, but wished to be heard "on the resolution." The Defendant called his probation officer, Marcus Jones, to testify. Mr. Jones stated that the Defendant had complied with the terms of his probation and was a "model" probationer before this incident.

In his own testimony, the Defendant admitted to making an "irrational, impulsive decision" to flee from law enforcement. However, the Defendant also claimed that he did not know that the investigator was a law enforcement officer and denied that the investigator pursued him with lights or sirens. The Defendant testified that he fled because he had previous experience with the court and feared coming back after having an accident with no driver's license.

After the conclusion of proof, the trial court found that the Defendant violated the conditions of his probation by committing new criminal offenses, including felony evading arrest, reckless driving, leaving the scene of an accident, and driving with a suspended license. The court also found that the Defendant failed to report the arrest to his probation officer. The court then ordered that the Defendant serve the balance of his original sentence of eleven months and twenty-nine days. The trial court entered the revocation order on June 14, 2023, and the Defendant filed a timely notice of appeal six days later.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this Court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion.

## ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is [the] rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the "first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.*

## A.     THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Where a defendant admits that he or she violated a condition of probation, the trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed.*

"[C]ompliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). As this Court has recognized in the context of felony probation, "The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)). In felony probation cases, a trial court's authority to revoke probation fully for criminal conduct is generally limited to non-technical violations, or those consisting of new felonies or Class A misdemeanor offenses. *Id.*; Tenn. Code Ann. § 40-35-311(g) (Supp. 2022).[1] This statutory limitation does not exist, though, when the defendant is on probation for a misdemeanor offense.

In this case, the Defendant was on probation for a misdemeanor, and the trial court found that the Defendant violated the conditions of his probation by committing new criminal offenses. On appeal, the Defendant does not dispute that he violated his probation through this criminal conduct, and, as such, we conclude that the record supports a finding that the Defendant committed a violation of probation.

## B.     THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023); *see also State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) ("[T]he trial court may review a defendant's past criminal

---

[1]     If the new criminal conduct consists of a Class B or C misdemeanor, the trial court may fully revoke the defendant's felony probation when the conduct results in a fourth or subsequent revocation. *See* Tenn. Code Ann. § 40-35-311(e)(1).

history in order to determine, based on a totality of the circumstances, 'whether the beneficial aspects of probation [are] being served' and whether the defendant is amenable to continued probation."), *no perm. app. filed*; *State v. Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at \*5 (Tenn. Crim. App. Oct. 23, 2008) (observing that the trial court "took a totality of the circumstances approach in order to decide whether the defendant's probation violations merited incarceration or another opportunity for rehabilitation. After doing so, the court determined that the defendant was not amenable to continued probation."), *no perm. app. filed*.

As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at \*5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]").

In this case, the Defendant argues that the trial court did not separately identify reasons why full revocation of the suspended sentence was appropriate. We respectfully disagree. Importantly, "[i]t is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759. In our review of the trial court's announcement, it is clear that the trial court's consequence determination relied upon two reasons in particular.

First, the trial court was concerned about the nature and seriousness of the violations, finding that the Defendant violated the terms of his probation in "a substantial way." This was a proper consideration for the trial court and one expressly authorized by *Dagnan*. *See Dagnan*, 641 S.W.3d at 759 n.5. Importantly, the Public Safety Act of 2016 permits trial courts to consider whether a violating probationer can "remain compliant and crime-free in the community" as part of the consequence determination. Tenn. Code Ann. § 40-28-302(2). From this premise, this Court has also observed that "[t]he rehabilitative goals of probation are directed precisely toward the goal of lawful conduct and public safety. Thus, this Court has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served."

5

*State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.

The record confirms that the Defendant's conduct was particularly serious. Investigator Herndon testified that, as the Defendant evaded police, he traveled at excessive speeds and drove in the opposing lane of traffic. The Defendant's decision to endanger others to avoid accountability shows that he presents an unacceptable risk to the safety of the community and the people in it. Further, his new criminal conduct was similar to his original offense in that both involved the dangerous operation of a motor vehicle. *See State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023) (recognizing that repeated criminal conduct of a similar nature "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct." (citations omitted)), *no perm. app. filed*. As such, the trial court properly considered the nature and seriousness of the Defendant's new criminal conduct as part of the consequence determination.

Second, and perhaps more importantly, the trial court was concerned about the Defendant's ability to follow court orders meant for the safety of the community. As the trial court explained,

> I mean, [the Defendant] was convicted of a DUI first offense. His license was revoked. He was told he couldn't drive a motor vehicle. I mean, that's what the Court ordered him, not to drive a motor vehicle until he gets his privileges reinstated, which apparently he has never done that. . . . He wasn't supposed to be driving, period.

In considering whether to place a defendant on probation in the first instance, a trial court must consider measures that encourage "effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that *elicit voluntary cooperation* of defendants[.]" Tenn. Code Ann. § 40-35-102(3)(C) (emphasis added). This principle of sentencing recognizes that rehabilitative efforts cannot be "reasonably feasible" when the defendant does not voluntarily comply with those efforts. Thus, when a trial court weighs whether to *continue* rehabilitative efforts, it may certainly consider whether the defendant will voluntarily comply with the court's orders. *See State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022) (affirming full revocation, in part, when "the trial court concluded that other factors outweighed the Defendant's request for additional community-based treatment, including that the Defendant could not be expected to comply with the court's rehabilitative orders"), *no perm. app. filed*. The trial court's consideration of this fact was appropriate as part of the consequence determination.

6

Admittedly, the proof at the hearing showed that the Defendant had complied with other technical aspects of his probation. However, the proof also showed that the Defendant engaged in new criminal conduct, placed the safety of the community in danger, sought to escape accountability for those actions by evading police, and knowingly violated orders meant for his effective rehabilitation. We conclude that the trial court acted within its discretion in fully revoking the Defendant's suspended sentence.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in finding that the Defendant violated the terms and conditions of his suspended sentence. We also hold that the trial court acted within its discretion when it revoked the Defendant's suspended sentence and ordered that he serve the balance of his sentence in the Department of Correction. We respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE

7